Good morning, please. Come on up and speak with us, Mr. Richardson. Thank you and welcome. Tom Richardson Please, the court members of the panel, I'm Tom Richardson and along with Frances Clay, we represent Officer William Barron. We're asking this court to reverse the district court's decision denying qualified immunity to Officer Barron. I would like to begin by focusing on the factual scenario when Officer Barron first came in contact with the plaintiff, Ms. Horn. Officer Barron was told by two young girls there that a woman had assaulted them. One girl said she'd been hit in the face and she had visible contusions and a bloody nose. The other one said that this lady had attempted to choke her. Both girls identified the plaintiff who was being escorted out by two other officers. I'm sorry, you're telling us what Officer Barron knew? Yes. Okay, thank you. And they identified the plaintiff as the person who had assaulted them. Once outside the concert, Ms. Horn became irate, as she said, pissed off and started yelling obscenities at Officer Barron and the other officers that were there. In fact, Ms. Horn conceded that she was saying F-you, F-this, F-that and that she surmised later, I think I offended Officer Barron. Officer Barron decided to arrest plaintiff for disorderly conduct, which the district court held was reasonable and therefore a lawful arrest based on what Officer Barron knew at the time. The right to arrest authorized Officer Barron to make physical contact with the plaintiff. Officer Barron took hold of Ms. Horn's arm, at which point she had a choice, either comply or not comply. She testified later, I mean, when he grabbed my arm, I pulled toward me, asking him why he put his hands on me. She now claims she did not resist, but that is a conclusory statement that is at odds with her admission regarding pulling her arm from him. In point of fact, she actually admits that she did not comply because she said that she quote, would have complied if Officer Barron had told her that she was under arrest. At the point at which she pulls her arm away from Officer Barron, now he's got two choices too. He can take the chance that this person who has been yelling obscenities, who has already hit a girl in the face and choked another one, who is admittedly irate and who is at a minimum acting erratically and oppositional to the officers, will all of a sudden become docile and allow herself to be handcuffed. Or Officer Barron can do what we believe any reasonable officer under the circumstances facing those facts would have done. That is, Officer Barron would take control of the arrestee so that he would not be subjected to her trying to evade him or take some action against him. If she pulled her arm away, she might have the opportunity to use a weapon or at a minimum use her fingernails to strike at Officer Barron. Do you know what an arm bar technique is? Yeah, well, I know what the testimony was, is that he puts his right hand over her left arm and he uses his weight to bring her down. They're both going to go down, but he's at least going to have control of her at that time. Was there any, there's some discussion in the briefs about the fact that he didn't announce to her that he was placing her under arrest. Is there any legal significance of that fact? There's not a requirement that he do so, and you can talk about what's best and under the circumstances so forth, but I think the Eleventh Circuit cases are that we don't really question the methodology that goes into that. That's really the officer's choice and prerogative at the time. You know, the district judge said this was a he said, she said situation. Why and so therefore, didn't get qualified immunity, needed to go to trial? Why is that incorrect? The district court said that he read her testimony to say that she was compliant. I think if you read her testimony in full, that she has admitted to noncompliance. And that's where it turns. Tell me why the case turns on that. I should have thought your argument would have been that if the arrest was a lawful one, that is to say, the officer had probable cause to arrest the plaintiff for disorderly conduct, then the officer had the power to use some force to affect the arrest, including taking her down and arresting her on the ground, whether she resisted or not. Is that correct? Or does this case turn on whether or not taking the evidence in a light most favorable to the nonmoving party, she was resisting in some form when he took her on? Well, I think we went on both accounts. I think he's got the he's got a right to arrest, which means he's got a right to do whatever is reasonably necessary to effectuate the arrest. But if she wasn't resisting, just to follow up on the line of questions that Judge Bukla was asking, if she was not resisting when he was placing her under arrest, and she said she was compliant, at least at a higher order of abstraction, could the officer lawfully take her down to effect the arrest? I believe so. What authority do you have for the proposition that they could take her down for the arrest? Well, I think the general rule that he's got to do what is reasonably necessary to effectuate the arrest, and the first part didn't work. He just put his hand on her arm, and that wasn't successful. I think what, where the district court... No, no, I'm asking you to assume for the purposes of my question that you accept her statement that she was fully compliant, and that she did not resist in any way when he took her arm. I know factually she says two things. She says she's compliant at one point in the interrogation at a very high order of generality, and at another point she says she pulled her arm in some fashion. But let's just assume you accept the statement that I was fully compliant. Could he take her down at that point anyway? I think he could, because I think that you still have to look and say, with taking her down, was that excessive under the circumstances? Was it excessive under all the circumstances present at the time? And I think the answer to that is that's really the minimum usage of force. It's not a gun. It's not anything, a taser or anything stronger than that. It's not a fist in the face. And the result is important. I mean, one of the things you have to consider is the result, and she broke her arm. But the amount of force used I think is a more important inquiry, and the amount of force used was not excessive in this case. It just happened to accidentally end up with a bad result. Well, and also, you know, we should keep in mind, I think here, that the question we've been asked to decide necessarily is the qualified immunity question and not the underlying constitutional question, right? I mean, you might say in response to Judge Marcus's question, close call. But in any event, there's no case that demonstrated to him that he couldn't do this. Right. I agree with that. And I think the question is, would a reasonable officer under the same or similar circumstances know that what they were about to do in taking her down was unconstitutional? And I don't think there's a case that suggests that or says that. Now, our position is that once Ms. Horn, who was not handcuffed, she resisted. We believe that the facts are clear that she did some resistance there, that Officer Barron was entitled to use increased force. And the differentiation here is that the Mobley case says, our decisions demonstrate the point at which a suspect is handcuffed and poses no risk of danger to the officer, often as a pivotal point for excessive force claims. We have held a number of times that a severe force applied after the suspect is taken into custody is excessive. Conversely, and this is what's important to us, force applied while the suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive. So and as far as qualified immunity is concerned, once you find that, as the court did, that he's acting in a, that the officer is acting in a discretionary capacity, the burden then shifts to the plaintiff to show that qualified immunity should not apply. And I don't think we've gotten that case yet, either from the plaintiff or from the district court, that shows that qualified immunity should not apply under these circumstances. You have to ask what case law would have put Officer Barron on notice that his use of force might violate the Fourth Amendment? Is the closest case that the other side has, and I guess we can ask your opponent this as well, but is the closest case they have this Popham case? Yes, and I was going to address that. I think the Popham case is their best case. I think what differentiates Popham from us is that both the chief of police and another officer tackled him after he was totally compliant and not resisting whatsoever. And then they took him to the ground, and they kneed him in the groin, they did several things to him. And the force in that case was so excessive that the case really turned on that force. The case didn't turn on the fact that he was compliant. The case turned, at least the way I read it, on how much force was used, and it was clearly excessive under the circumstance. And likewise, there are a number of cases. Those cases where people are handcuffed, where you get into discussion about gratuitous force, there are a lot of those cases that don't apply to ours because this person was not handcuffed and I don't think any reasonable person could say that she was totally compliant with the direction that the officer was trying to go in. I think if there are no further questions at this time, I'd like to reserve the rest of my time. Thank you. Good morning. May it please the court, Marilyn Quill for Deanne Horn, the appellee. This case, contrary to what counsel says, is about credibility, and I think the district court correctly concluded that Ms. Horn is entitled to a trial by jury on the issue of whether there was excessive force. As counsel said, we have various stories, competing stories about what actually happened the day of the arrest. Let me begin this way. Did they have, did the officer have probable cause to arrest her? I would say yes at this juncture. Right, that's not in dispute. Disorderly conduct, yes, she was. If they had probable cause to effect an arrest, they had the right to use some force to effect the arrest. Correct. The question is how much? How much force, and given the nature of the offense that she was accused of, which was just disorderly conduct. Haven't we said repeatedly in holdings, in published cases, that in effecting an arrest, an officer is free to take the defendant down to the ground to effect the arrest and handcuff the person? I'm sorry. What the courts have said, Your Honor, is that the amount of force is dependent upon several factors, including the nature of the offense, whether the arrestee is fleeing or attempting to flee, posing a danger, none of those effects. No, I understand the general factors, but have we not said, as a general observation and held, that an officer can take someone down to the ground to effect the arrest with cuffs? Yes, if the effects of that situation suggest that that's what's necessary. Well, let me give you three cases, and you can tell me how to handle them, where we've said that. One was Duruthi, the pastor. The arrestee was a freelance journalist. I remember the case well. He was covering a street protest in downtown Miami. He was given permission by the officers to shoot video of the event in the street. Later, as he was filming an arrest in the street, he was standing in the street. The officer instructed him to go back to the sidewalk. He continued to film. At that point, the officer, without any warning, grabbed the arrestee from behind, pushed him to the ground, and hit him in the back in order to handcuff him, on the theory that he was obstructing the officer in the performance of his duties. The journalist put up no resistance and claimed this force was excessive. The court said, while it may be true that the force was unnecessary, it held that it was plainly not unlawful, writing that the police were allowed to use some force in effecting the arrest, and the application of de minimis force, without more, would not support a claim for excessive force. De minimis force in that case specifically being taking the journalist down to the ground and then cuffing him behind. We said the same thing in Akrum v. Balkwell, where a warrant was being effected on a house where someone was suspected of selling controlled substances. There was a woman in the house, an elderly woman. The officers ordered the woman to get down. She said no. She refused. They took her down to the ground. The question was, was that excessive force? And again, a panel of this court held that that was not excessive. That was de minimis force. We've said that. We said the same thing again in a case called Myers v. Bowman. My question is whether or not, accepting your recounting of the facts, even if she had not resisted in any way, could they not have taken her to the ground for the purpose of arresting her? That doesn't mean they could pick her up and fling her to the ground, for sure, but could they take her to the ground and handcuff her without doing something that amounted to more than de minimis force? Well, Your Honor, the question that comes to my mind is whether it was necessary to take her to the ground. And what's different with these facts is Officer Barron never, about 30 seconds elapsed from the time that he first saw Ms. Horn, using profanity, until the time that he took her to the ground. During that time, he gave no verbal instructions. Right. The reason I raise it is, in Duruthi v. Pastor, the Court acknowledged that it might not have been necessary. But still, the focal point was the force used to effect a lawful arrest. And I'm just asking whether, if the force used to effect the arrest is simply to take someone down to the ground, whether that violates the Fourth Amendment and amounts to excessive force, when we've said in a number of instances it does not. Well, the Court has also said that under situations where the offense was minimal, this was just a disorderly process. Your Honor, I think that's absolutely relevant, what the nature of the offense. And also, there was no act of resistance. We have Mr. Horn testifying that there was no resistance, Ms. Horn testifying that there was no resistance. Well, let me ask you about that. What your colleague says about resistance is that, if you look at her account, she says two different things at two different places in the course of the deposition. At one point, she says unambiguously she was compliant. But at another point, she says or appears to say when he took her arm, she pulled her arm back in some form or fashion, and that a reasonable officer could have taken that to be resistance. I think what she said, Your Honor, was as a reflex, because she had no warning that Officer Beering was coming toward her or intended to arrest her. Her understanding was that she had been ejected from the concert already and was free to leave. She had been escorted out by two additional officers. So at that point, it was her understanding that she could go, they had told her to leave. And Officer Beering, overhearing her, using profanity that he assumed was directed at him, immediately came and took her to the ground without saying anything, without giving her any instructions, without any indication of what his intent was in placing her under arrest. One concern I have is that the district court and the briefing in this case seems to distinguish between her version, as Judge Marcus has quoted her as saying, that she pulled her arm toward herself or something like that, pulled toward herself, which the district court seems to put on the one side, like no force available in that situation or this takedown not available in that situation, and then other witnesses who said she snatched back, jerked back, whatever, as if to say would have been fine there. So now there's this very fine distinction between pull my arm toward myself and snatch back, and it just seems an awful lot to require police officers in sort of the hurly-burly to make that fine distinction between is this a pull back or a snatch back? Because if it's a pull back, I can't take her down, if it's a snatch back, I can take her down. I guess I have some concern from a qualified immunity perspective about how the officer is supposed to process that and the six factors in a flash. What's your sort of, if you can kind of assuage my concern about asking officers to make that six-factor analysis and these fine judgments in the heat of the moment to avoid personal liability? Your Honor, I don't think it's necessarily required that the officer go through every of the six factors that instantaneously, but given the facts of this case and the situation that Officer Barron found himself in, his intent was to arrest Ms. Horn. That could have been accomplished simply by saying put your hands behind her back. That could have been accomplished by giving her some verbal instructions where she anticipated that she was being placed under arrest. Rather than do that, Officer Barron simply went up and basically, as he said, took her down and put his foot in her back. And the entire situation, I think, could have been avoided had she known that she was going to be placed under arrest or that he was even coming toward her. He indicated he was about ten feet away when he approached her. And within that time frame, nothing was said, and I think as a reflex, yes, she said she kind of pulled her arm back, not realizing that she was even being placed under arrest. So I guess I asked your opponent the same question. Do you place some legal significance on the fact that he didn't announce his intention to arrest her? Is there a requirement in the case law that he do that? I don't know that there's a requirement, but under the situation where the arrestee has already been released by other officers, free to go, and she was, in her mind, a free citizen using profanity, yes, but still free to leave. And until she was placed under arrest by Officer Barron, she had no knowledge that she was even subject to arrest at that point. She had been escorted off the premises already and was outside of the gate. So given that, I think those circumstances, yes, Officer Barron, who was simply just standing there at the time along with two other officers, didn't give any indication that she was even being placed under arrest. Let me ask the question slightly differently. Qualified immunity law is clear to the extent that if he's engaged in a discretionary function, the burden then falls to the plaintiff to establish two things. One that there was a violation of the Constitution or the laws of the United States. Here the claim is that the Fourth Amendment was violated because the force was excessive. And two, even if you meet your burden as to that, you've got to establish a second thing, that the law was clearly established at the time so that a reasonable officer acting under these circumstances would have been given fair notice that what he was doing violated the law. It's the second part of the test that I want to ask you about. What clearly established law was out there at the time that would have told the officer in this case that what he was doing violated the Fourth Amendment? Well, as the district court pointed out, Your Honor, when a non-violent suspect accused of some minor offense, not resisting arrest, and we still take the position that she was not resisting arrest, she simply jerked her arm in response to being grabbed unknowingly and unexpectedly. So given that, any type of extreme force and taking her down with such degree of force that it snapped her arm and then he put his back in her, his knee in her back. The district court cites the three cases, which he says clearly established the law. And again, for our purposes, the law can be clearly established either by the Supreme Court of the United States, this court, or by the highest court of the state within which the action occurred. He cites three and three alone. He cites Slicker v. Jackson, Hadley v. Gutierrez, and Philz v. the City of Aventura. He doesn't explicate them in any way, but he just says these are the three cases that stand for the proposition that the law was clearly established at the time of the incident that a non-resisting and otherwise compliant arrestee has a right to be free from excessive force. Stated with that generality, that's of course correct, but we've got to go behind that. If you look at two of those cases, Hadley and Slicker, in both of those cases, the suspect had already been handcuffed and had been safely taken into custody. That wasn't the case here. It's factually different, at least to that extent. How could those two cases, Slicker and Hadley, clearly put an officer on notice that he could not take her down to arrest her when we've got three cases out there that say you can? Well, actually, Your Honor, she had been released from custody by the other officer, Officer Bray, who took her to the gate and released her and discharged her, so we take the position that she wasn't. I thought you said that the officer was free to arrest her outside the gate for disorderly conduct. She had engaged in disorderly conduct prior to coming outside of the gate. At that point, she was cursing, and Officer Barron testified that he was simply holding the fort for Officer Bray, who would come back and then arrest her. Right, but I thought that you agree, and if not, correct it, because I think it's a very relevant point. Did Officer Horn have the right to arrest her outside of the concert arena that evening? Officer Barron? Barron, I'm sorry. Based on the conduct that occurred within the premises and what he later learned from Officer Bray, yes. Okay, and when he took her down, she had not yet been taken into custody. He was in the process of arresting her when he took her to the ground, and I'm simply suggesting that the problem with Hadley and Slicker is that factually, those cases seem to me to arise in a different context, that is to say after the arrest has been effected, as opposed to in the process. Is that a distinction without a difference, or is that a meaningful distinction for purposes of qualified immunity as you see it? I don't see a great distinction in that, Your Honor, given the amount of horseshoes and the other factors involved in that case. Is there any other case that you could point us to that would have clearly established the law in such a manner as to have put the officer on fair notice, that he couldn't do what he did do, except in her recitation of the facts? Is there any case out there beyond those that would have put him on notice that you could cite me to? Not that I can cite at this time. In fairness, I've been there. Sometimes it's hard to remember on your feet, but in your brief, you refer to this case Popham. Yes, that's correct. And so talk to us about Popham and why you think it might have clearly established the law. Popham was a takedown case. Your opponent says Popham is different, and it certainly is factually different because it seems to me that like four officers beat the guy senseless after he was on the ground. But do you think you can salvage some clearly established law from Popham? Well, Your Honor, in citing that case, the facts in that matter seem to be more similar to those in our matter than some of the others cited by the district court, which is why we brought that case up in our brief. And I think that case does establish clearly that the officer would have been on notice that his takedown of a plaintiff, of arrestee in these circumstances would violate the law. Clearly established law. So if I have the heart of your argument, it is essentially that under the circumstances of this case, even if the force of taking her down is de minimis, and we look at the force applied as opposed to the injury that may have occurred, even if the force was de in taking her down in the first place because she was not resistant. She was not resistant. She was compliant. But that's the critical point. If she's not resisting, the officer cannot take her down and arrest her that way. Correct. That has to be at the core of the argument, right? Yes. Okay. Thanks very much. Thank you. Just very briefly, I want to underscore the fact that we agree with you, Judge Marcus, in your analysis about once the arrest is a lawful arrest, then I think the officer can use reasonable force to effectuate the arrest, including taking the arrestee to the ground. Let me ask you a question. Would it not be relevant in the mix to look at the nature of the injury sustained? That's part of the inquiry, but there are cases that say the focal point, the core question is the amount of force used. So if you look at . . . Not the result. I understand, but if it is relevant to look at the nature of the injury actually sustained, in this case, she didn't just get bruised. She broke her arm when they took her down, when he took her down. Would that not be relevant in the mix? I think it's relevant, but I think it is not as important as examining the force used. And I don't think the force used, either necessarily or in any probability, is going to end up with a broken arm. And you would concede, would you not, that the underlying offense for which she was being arrested was pretty modest? This wasn't an armed robbery. Of course, I think the court also pointed out that she . . . I mean, this was a disorderly conduct charge. It wasn't . . . Right. But she could have been arrested, as the trial court said, for assault and battery. Also, for the disorderly conduct, one of the sections of the disorderly conduct statute is to act in a violent or tumultuous manner, putting somebody in reasonable fear for their own personal safety, which I think would exist based on the statements . . . Let me ask you a legal question. When we look at what the officer did, we ask, if I have it right, what an objectively reasonable officer in that officer's shoes could have done if that officer had all of the relevant knowledge surrounding the circumstances, right? Yes. So you would look at what happened inside the arena . . . Right. . . . as well as the act of taking her out of the arena and what happened outside the arena? Yes. And I think the reason we spent so much time in discovery and in our brief about the conduct of the plaintiff after he put his hand on her arm is that we wanted to distinguish it from those cases that are gratuitous force cases in which there doesn't seem to be any justification for use of force after somebody is handcuffed, for instance, or in the rare circumstance where somebody is totally compliant and then they're subjected to way too much force. The officer didn't punch her. He didn't kick her. He didn't use any sort of force that's used to inflict injury. It's just a technique to bring the suspect . . . He used enough force to cause her arm to break. He did. He took her to the ground. They both went to the ground at the same time. They're both together on the ground and that's when her ex-husband jumped on the back of the officer and tried to pull him off. And it's also a principle that even when the offense is minor, that a prudent officer must consider the possibility of a violent response. This was a fast-evolving situation and Officer Barron, we don't believe, should be second guessed for his conduct. We urge the Court to find that Officer Barron is entitled to qualified immunity. Thank you. Thank you. Thank you both for your efforts. Should we go on or do you want to break? I'm fine. We will call the third case, LNV Corporation v. Brown.